**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MUSLIM COMMUNITY ASSOCIATION OF
ANN ARBOR, AMERICAN-ARAB ANTI-
DISCRIMINATION COMMITTEE, ARAB
COMMUNITY CENTER FOR ECONOMIC
AND SOCIAL SERVICES, BRIDGE REFUGEE
AND SPONSORSHIP SERVICES, INCORPORATED,
COUNCIL ON AMERICAN-ISLAMIC RELATIONS,
and ISLAMIC CENTER OF PORTLAND, MASJED
AS-SABER,

    Plaintiffs,

                                          Case No. 03-CV-72913-DT

v.

                                          HONORABLE DENISE PAGE HOOD

JOHN ASHCROFT, UNITED STATES
ATTORNEY GENERAL, and ROBERT
MUELLER, DIRECTOR OF THE FEDERAL
BUREAU OF INVESTIGATION,

    Defendants.
_____/

**MEMORANDUM OPINION AND ORDER**

**I.    BACKGROUND**

Plaintiffs Muslim Community Association of Ann Arbor ("MCA"), American-Arab Anti-Discrimination Committee ("ADC"), Arab Community Center for Economic and Social Services ("ACCESS"), Bridge Refugee & Sponsorship Services ("Bridge"), Council on American-Islamic Relations ("CAIR"), and Islamic Center of Portland, Masjed As-Saber ("ICPMA") filed this action against Defendants John Ashcroft, United States Attorney General, and Robert Mueller, Director of the Federal Bureau of Investigation ("FBI"). Plaintiffs challenge the constitutionality of Section 215 of the Patriot Act, 50 U.S.C. § 1861(a)(1), alleging five causes of action: 1) Section 215 violates the Fourth Amendment by authorizing the FBI to execute searches without criminal or foreign

intelligence probable cause; 2) Section 215 violates the Fourth Amendment by authorizing the FBI to execute searches without providing targeted individuals with notice or an opportunity to be heard; 3) Section 215 violates the Fifth Amendment by authorizing the FBI to deprive individuals of property without due process; 4) Section 215 violates the First Amendment by categorically and permanently prohibiting any person from disclosing to any other person that the FBI has sought records or personal belongings; and 5) Section 215 violates the First Amendment by authorizing the FBI to investigate individuals based on their exercise of First Amendment rights, including the rights of free expression, free association, and free exercise of religion. (Complaint, ¶¶ 153-57)

Congress enacted the USA PATRIOT Act[1] in response to the events of September 11, 2001. The Patriot Act amended the Foreign Intelligence Surveillance Act of 1978 ("FISA"), 50 U.S.C. § 1801 *et seq.* FISA originally allowed designated judges on the Federal Intelligence Surveillance Court ("FIS Court") to authorize electronic surveillance to obtain foreign intelligence information if probable cause exists that the target of the electronic surveillance is a foreign power or an agent of a foreign power and that the facilities or places at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power. 50 U.S.C. § 1805(a)(3); *see, In re Sealed Case,* 310 F.3d 717, 722-28 (ForeignInt.Surv.Ct.Rev. 2002). Sections of FISA, not at issue in this case, were amended in 1994 and in 1998.

Defendants filed a Motion to Dismiss based on the 2001 version of the Patriot Act. Plaintiffs filed a response. Supplemental briefs and various documents have been filed. Three *amicus curiea* briefs were filed by: 1) the American Friends Service Committee, Asian Law Caucus, Episcopal

---

[1] "Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001," Pub.L. No. 107-56, 115 Stat. 272 (Oct. 26, 2001) ("The Patriot Act").

Migration Ministries, Immigration and Refugee Services of America, International Institute of San Francisco, Lawyers' Committee for Civil Rights, and Oregon Action; 2) the National Association for the Advancement of Colored People, the Asian American Legal Defense and Education Fund, and the Japanese American Citizens League; and, 3) various First Amendment Organizations: the American Booksellers Foundation for Free Expression; the Association of American Publishers; the Association of American University Presses; the Center for First Amendment Rights, Inc.; the Comic Book Legal Defense Fund; Electronic Frontier Foundation; Feminists for Free Expression; the First Amendment Project; Freedom to Read Foundation; and Pen American Center.

A hearing was held on the matter on December 3, 2003. The Court took the matter under advisement.[2] While the matter was under advisement, the USA Patriot Improvement Reauthorization Act of 2005, Pub. L. No. 109-177, Stat. 192 ("Reauthorization Act") and the USA PATRIOT Act Additional Reauthorizing Amendments Act of 2006, Pub. L. No. 109-178, 120 Stat. 278 ("Amendments Act") were enacted by Congress in March 2006. The parties in this case agree that the recently-enacted Acts substantially amended Section 215, the statute at issue in this litigation. Plaintiffs strongly dispute the Government's suggestion that the Reauthorization Act cured all of the constitutional deficiencies Plaintiffs believe exist in the statute. Plaintiffs do not believe that it would be efficient for the Court to rule on the Government's pending motion to dismiss, which addressed the statute enacted prior to the amendments. Plaintiffs seek addition time to consult with all of the Plaintiffs involved in this case to determine whether an amended complaint will be filed to reflect the changes in the law.

---

[2] The Court realizes that this opinion has taken an extraordinary amount of time to issue and for that, the Court takes responsibility. The Court is aware that the issues raised in the Complaint and in the Government's papers are important to us all.

The Government objects to Plaintiffs' request arguing that under either version of the statute, Plaintiffs have no standing to challenge Section 215. The Government asserts the Court should rule on the standing issue in this case.

## II. ANALYSIS

### A. Standard of Review

Defendants seek dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure arguing Plaintiffs lack standing, the claims are not ripe for judicial review, Section 215 complies with the Fourth Amendment, Section 215 complies with the Due Process Clause of the Fifth Amendment, and Section 215 complies with the First Amendment.

Rule 12(b)(1) provides for dismissal for lack of jurisdiction over the subject matter. Fed. R. Civ. P. 12(b)(1). Motions under Rule 12(b)(1) fall into two general categories: facial attacks and factual attacks. S*ee, RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1134 (6th Cir. 1996). A facial attack challenges the pleading itself. In considering this type of attack, the court must take all material allegations in the complaint as true, and construe them in light most favorable to the non-moving party. *Id.* Where subject matter jurisdiction is factually attacked, the plaintiff bears the burden of proving jurisdiction to survive the motion, and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* In a factual attack of subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

Rule 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted. This type of motion tests the merits and legal sufficiency of the plaintiff's complaint.

*Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). A court takes the factual allegations in the complaint as true when evaluating the propriety of dismissal under Fed. R. Civ. P. 12(b)(6). *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 512 (6th Cir. 2001); *Hoeberling v. Nolan*, 49 F. Supp.2d 575, 577 (E.D. Mich. 1999). The court construes the complaint in the light most favorable to the plaintiff, and determines whether it is beyond a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426, 429 (6th Cir. 2001). If the court considers matters outside the pleadings before it in a 12(b)(6) motion, the Rule 12(b)(6) motion will be considered a Rule 56 summary judgment motion. *RMI Titanium Co.*, 78 F.3d at 1134.

**B.     Standing**

Defendants seek to dismiss the case arguing that Plaintiffs lack standing. Because Defendants claim that Plaintiffs cannot meet the lack of standing to challenge the constitutionality of Section 215 on their First Amendment claims under *either* the old or the new version of Section 215, the Court will address the lack of standing issue on Plaintiffs' First Amendment claims. The Court will address the old version of Section 215 since Plaintiffs have not briefed the new version and Defendants argue that Plaintiffs cannot meet the lack of standing to challenge the constitutionality of Section 215 under either version.

Section 215 of the Patriot Act amended Section 502 of FISA to allow the FBI to apply to the FIS Court "for an order requiring the production of any tangible things (including books, records, papers, documents, or other items) for an investigation to obtain foreign intelligence information not concerning a United States person or to protect against international terrorism or clandestine intelligence activities, provided that such investigation of a United States person is not conducted

solely upon the basis of activities protected by the first amendment to the Constitution." 50 U.S.C. § 1861(a)(1). The old provision in FISA only allowed the FBI to compel disclosure of certain "business records." Section 215 of the Patriot Act allows the FBI to compel production of "any tangible things (including books, records, papers, documents, or other items). The old provision allowed disclosure from a limited set of entities, such as, a "common carrier, public accommodation facility, physical storage facility, or vehicle rental facility." Pub.L. No. 105-272, § 602 (Oct. 20, 1998). The Patriot Act eliminated the requirement under FISA that there be "specific and articulable facts giving reason to believe that the person to whom the records pertain is a foreign power or an agent of a foreign power." *Id.* Section 215 of the Patriot Act only requires that the FBI specify that the "records concerned are sought for an authorized investigation ... to protect against international terrorism or clandestine intelligence activities." 50 U.S.C. § 1861(b)(2).

Standing is a jurisdictional matter and is a threshold question to be resolved by the court before the court may address any substantive issues. *Planned Parenthood Ass'n v. City of Cinicinnati,* 822 F.2d 1390, 1394 (6th Cir. 1987). Article III of the United States Constitution limits the federal courts' jurisdiction to "cases and controversies." In *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992), the United States Supreme Court set forth three elements to establish standing: 1) that he or she suffered an injury in fact, which is both concrete and actual or imminent; 2) that the injury is caused by defendants' conduct; and 3) that it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61. "A plaintiff bears the burden of demonstrating standing and must plead its components with specificity." *Coyne v. American Tobacco Co.,* 183 F.3d 488, 494 (6th Cir. 1999)(citing *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 472 (1982)).

In the First Amendment context, the Supreme Court has noted, "in order to have standing, an individual must present more than 'allegations of a subjective 'chill'.' There must be a 'claim of specific present objective harm or a threat of specific future harm'." *Bigelow v. Virginia,* 421 U.S. 809-816-17 (1975)(quoting *Laird v. Tatum,* 408 U.S. 1, 13-14 (1972)). A subjective chill, without more, does not confer standing on a party. *Fort Wayne Books, Inc. v. Indiana,* 489 U.S. 46, 60 (1989). A party must show that "the 'chill' on First Amendment expression normally stands as the '*reason* why the governmental imposition is invalid rather than as the harm which entitles [a party] to challenge it.'" *Adult Video Assoc. v. United States Department of Justice,* 71 F.3d 563, 566 (6th Cir. 1995)(quoting *United Presbyterian Church in the United States v. Reagan,* 738 F.2d 1375, 1378 (D.C. Cir. 1984)).

However, in a "facial" pre-enforcement challenge to a statute, a "threat" of present injury is sufficient to satisfy constitutional standing requirements. *Adult Video Ass'n,* 71 F.3d at 567. "The overbreadth doctrine provides an exception to the traditional rules of standing and allows parties not yet affected by a statute to bring actions under the First Amendment based on a belief that a certain statute is so broad as to 'chill' the exercise of free speech and expression." *Dambrot v. Central Michigan Univ.,* 55 F.3d 1177, 1182 (6th Cir. 1995)(citing *Leonardson v. City of East Lansing,* 896 F.2d 190, 195 (6th Cir. 1990) and *Broadrick v. Oklahoma,* 413 U.S. 601, 612 (1973)). "A statute is unconstitutional on its face on overbreadth grounds if there is 'a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court. ...'" *Dambrot,* 55 F.3d at 1182 (quoting *Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 801 (1984)). The Sixth Circuit has declined to save an unconstitutional ordinance and a University policy by accepting the representations of the city and the University that

the ordinance and policy would be enforced in a particular way or that there was no intention to enforce a certain policy. *Dambrot,* 55 F.3d at 1183 (citing *Vittitow v. City of Upper Arlington,* 43 F.3d 1101 (6th Cir. 1995)).

Here, Plaintiffs made a facial pre-enforcement challenge to Section 215. Plaintiffs need only show a "threat" of present injury to satisfy constitutional standing requirements on their First Amendment claims. *Adult Video Ass'n,* 71 F.3d at 567. A review of the papers previously filed by the parties shows that with regard to their First Amendment claims Plaintiffs have carried their burden in establishing standing. Plaintiffs claim they have shown that: they have suffered concrete injuries; they have a reasonable fear that their own speech and association will be targeted under the statute; the chilling effect of Section 215 has caused them concrete harm; and, Section 215 fails to provide procedural safeguards.

Plaintiffs are six non-profit organizations that provide various services to people throughout the United States. (Complaint, ¶¶ 4-9, 40, 42-44, 78-80, 86-89, 96-103, 120-22, 136) Plaintiffs claim they maintain a variety of personal records and documents related to their organizations, members, and clients. Plaintiffs claim many of these records are confidential. (Complaint, ¶¶ 74, 78, 84, 95, 134)

MCA owns and administers a mosque and an Islamic school, the Michigan Islamic Academy, in Ann Arbor, Michigan. MCA maintains a variety of records and religious documents associated with the mosque and the Michigan Islamic Academy. (Complaint, ¶ 73) MCA has alleged in the Complaint that because of the relationship between MCA, its members and leaders, and persons and organizations investigated, questioned, detained, or arrested since September 11th, MCA believes that the FBI has used or is currently using Section 215 to obtain records or personal

belongings of it and its members, students, and constituents. (Complaint, ¶ 45) MCA specifically cites the action taken against Rabih Haddad who was an active member of the MCA and volunteer teacher at MCA's Michigan Islamic Institute. Mr. Haddad was arrested on immigration charges, denied bond, and held in solitary confinement for months with no access to his family or outside world. Some of the MCA members founded the Free Rabih Haddad Committee in December 2001 and MCA has held numerous fundraisers and public rallies to protest Mr. Haddad's detention. (Complaint, ¶¶ 46-47) MCA also cites individual cases involving its leadership and members where MCA claims certain evidence used against them was obtained through wiretaps under the Patriot Act. (Complaint, ¶¶ 49-73)

ADC is a national civil rights organization based in Washington, D.C., committed to defending the rights and promoting the cultural heritage of people of Arab descent. ADC maintains a variety of records about its members, including credit card and checking account information. (Complaint, ¶ 84) ADC and its members have made public statements against the Patriot Act and in support of various individuals prosecuted by the Government. (Complaint, ¶¶ 81-82) Because of the relationship between ADC, its members, and persons questioned, detained, or deported since September 11th, ADC reasonably believes that the FBI has used or is currently using Section 215 to obtain records and personal belongings about it and its members. (Complaint, ¶ 83)

ACCESS is a human services organization based in Detroit, Michigan. ACCESS provides a wide range of social, educational, cultural, job training, and medical services to low-income families and newly-arrived immigrants from Arab countries. ACCESS serves more than a hundred thousand people each year. (Complaint, ¶ 86) ACCESS runs a Community Health and Resources Center, including a division of Psychosocial Rehabilitation for Survivors of Torture and Refugee

9

Family Strengthening, which provides mental health services to torture victims and refugees. (Complaint, ¶ 88) ACCESS maintains personal client records, including medical records. (Complaint, ¶ 95) ACCESS believes some of its members and clients have been individually targeted for investigation by the FBI, citing one of its members, Ahmad Ali Ghosn. (Complaint, ¶ 91) ACCESS also believes that if it was served with a Section 215 order, it would have no ability to challenge the order before compromising the privacy rights of its members and clients. (Complaint, ¶ 95)

Bridge is a non-profit organization with offices in Tennessee that assists refugees and helps asylum-seekers become and stay self-sufficient. Bridge is affiliated with Church World Service, which is the relief, development, and refugee assistance ministry of 36 Protestant, Orthodox, and Anglican denominations in the United States, and with Episcopal Migration Ministries. (Complaint, ¶¶ 96-98) Bridge serves approximately 200 new refugees and asylum seekers each year. Bridge serves its clients through individual sponsors from local churches, mosques and synagogues. The sponsors sign confidentiality agreements. Bridge provides its clients a spectrum of resettlement services. (Complaint, ¶¶ 101-103) Bridge maintains various records regarding its clients and various case notes taken by Bridge staff, including medical conditions and the nature of the persecution that the client has faced. (Complaint, ¶¶ 104-105) Bridge is concerned that Section 215 compromises its ability to maintain the confidentiality of its clients' records and that if it were served with a Section 215 order, it would have no ability to challenge the order before compromising the privacy rights of its members. (Complaint, ¶ 109) Bridge claims it has been approached by the FBI for information about its clients on at least two occasions in November 2002. (Complaint, ¶¶ 110-111) Bridge cites an example of one client, Muwafa Albaraqi, who was approached by the FBI in January

10

2003. (Complaint, ¶ 117) Bridge claims that Mr. Albaraqi would not have sought Bridge's assistance for sensitive and personal matters had he thought the FBI could easily access Bridge's records under Section 215. Mr. Albaraqi believes that other refugees will be less likely to seek help from Bridge because the FBI could obtain their sensitive and personal records. (Complaint, ¶ 119)

CAIR is a non-profit, grassroots organization dedicated to enhancing the public's understanding of Islam and Muslims and is the largest Islamic civil liberties organization in the United States. (Complaint, ¶ 120) CAIR has a national office in Washington, D.C., and it has various state and local chapters. (Complaint, ¶ 120) CAIR maintains a variety of records about members, including their names, home and business mailing addresses, phone numbers, email addresses, credit card information, and checking account information. (Complaint, ¶ 134) Because of its relationship with its members, and persons questioned, detained, or deported since September 11th, CAIR believes that the FBI is currently using Section 215 to obtain records and personal belongings of CAIR and its members. CAIR cites an example of one of its members, Magda Bayoumi. Two FBI agents came to Mrs. Bayoumi's home on February 26, 2003. The FBI agents focused on donations made by the Bayoumis to a charity called Help the Needy. The FBI did not inform Mrs. Bayoumi how they had learned that she and her husband had made a donation to Help the Needy. On the same day Mrs. Bayoumi was questioned an indictment charging Help the Needy with transferring funds to persons in Iraq without obtaining the proper license. Mrs. Bayoumi believes that because of her religion, her ethnicity, and her earlier support for Help the Needy, the FBI has used and is currently using Section 215 to obtain her records and other personal belongings. (Complaint, ¶¶ 128-133) CAIR also reasonably believes that it could be served with a Section 215 order and CAIR would have no ability to challenge the order before compromising the privacy rights

11

of its members. (Complaint, ¶ 134)

ICPMA is a non-profit organization that owns and administers a mosque known as Masjed As-Saber and an Islamic school known as the Islamic School of Portland. (Complaint, ¶ 136) ICPMA maintains a variety of records about community members, including their names and the names of family members, home and business mailing addresses, phone numbers, email addresses, credit card information, and checking account information. ICPMA also retains records of services it provides to community members, including Islamic marriage contracts, and records of divorce proceedings and financial assistance given to needy families. The School retains health, financial and educational records pertaining to all of its students and staff. (Complaint, ¶ 149) ICPMA believes that because of its relationship between the community members and leaders, and persons and organizations investigated, questioned, detained, or arrested since September 11th, ICPMA believes that the FBI has used or is currently using Section 215 to obtain records and personal belongings pertaining to it and its community members and students. (Complaint, ¶ 137) ICPMA claims that in October 2002, a federal grand jury indicted six individuals charging them with various counts of conspiracy to wage war against the United States and to provide material support to Al Qaeda. A seventh individual was charged in April 2003. Some of the Defendants attended the ICPMA. An affidavit in support of the indictment stated that a wired informant recorded conversations inside ICPMA on June 6, 2002 and that the electronic surveillance was authorized under the Patriot Act. The affidavit also indicates that the Government obtained a number of records relating to the investigation and that the investigation was ongoing. (Complaint, ¶ 139) The FBI has also sought records from ICPMA in March 2003. (Complaint, ¶ 140) ICPMA claims some of its leaders appear to be under investigation by the FBI and cites the example of Alaa Abunijem,

ICPMA's president. (Complaint, ¶¶ 141-42) Mr. Abunijem has been stopped and questioned by the FBI on a few occasions. (Complaint, ¶¶ 142-46) Mr. Abunijem believes that because of his religion, his ethnicity, his place of birth, his leadership role in ICPMA and other organizations, the FBI is currently using Section 215 to obtain his records and personal belongings. (Complaint, ¶ 148) ICPMA believes that it could be served with a Section 215 order and it would have no ability to challenge the order before compromising the privacy of its members. (Complaint, ¶ 149) ICPMA believes that the Government's possible target of it and its members violates their rights to free speech, free association, and free exercise of religion. (Complaint, ¶ 151) Many ICPMA community members are afraid to attend mosque, practice their religion, or express their opinions about religions and political issues. (Complaint, ¶ 152)

Taking as true the allegations set forth in Plaintiffs' Complaint, Plaintiffs have made a sufficient showing of present threats which have caused them injury. Plaintiffs have sufficiently alleged that they and their individual members may be or are currently subject to a Section 215 order. Plaintiffs have alleged that they and their members' right to speech and association are being threatened by Section 215. They fear that the Government has already obtained information or will be obtaining information by way of a Section 215 order. Plaintiffs and their members fear that the information contained in Plaintiffs' records are subject to a 215 order. Plaintiffs have alleged that their members are afraid to attend mosque, practice their religion, and express their opinions on religion and political issues. Plaintiffs' members are afraid to obtain services from the human services organizations for fear that any information obtained by the organization can be obtained by the Government. Plaintiffs have shown threats of present injury sufficient to satisfy constitutional standing requirements on their First Amendment claims. Defendants' Motion to Dismiss based on

lack of standing on Plaintiffs' First Amendment claims is denied.

### C. Ripeness and Mootness

Defendants argue that Plaintiffs' claims are not ripe and moot given that Section 215 has substantially changed. Plaintiffs agree that the Act has been substantially amended and moves for time to amend the complaint or to provide a status report. Plaintiffs claim they are attempting to consult with the other Plaintiffs to determine whether an amended complaint should be filed in this case. Plaintiffs assert that they have yet to reach all of the Plaintiffs to determine whether an amended complaint should be filed in this case.

Fed.R.Civ.P. 15(a) provides that a party may amend its pleading once as matter of course at any time before a responsive pleading is served. Otherwise, a party may amend its pleading by leave of court and leave shall be freely given when justice so requires. Fed. R. Civ. P. 15(a) The trial court has discretion to allow a party to amend its pleadings. *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987). If a proposed amendment would not withstand a motion to dismiss leave to amend should be denied. *Keweenaw Bay Indian Community v. State of Michigan*, 11 F.3d 1341, 1348 (6th Cir. 1993). A court may deny leave to amend where amendment would be futile. *Foman v. Davis*, 372 U.S. 178, 183 (1972). Futility includes failure to state a claim upon which relief can be granted. *Keweenaw Bay*, 11 F.3d at 1348.

In this case, no Answer has yet been filed by Defendants, therefore, Plaintiffs may amend their pleading without leave of court. Even if an Answer has been filed, leave to file an amended pleading must be freely given. Fed. R. Civ. P. 15(a). The Court will allow Plaintiffs thirty (30) days from the date of this Order to determine whether Plaintiffs will file an amended complaint in this case. The Court, therefore, denies without prejudice the remaining arguments raised by Defendants

in their Motion to Dismiss and its supplements. If no amended complaint has been filed within thirty days, Defendants may renew their Motion to Dismiss based on ripeness and mootness.

### III.    CONCLUSION

For the reasons set forth above, the Court finds Plaintiffs have shown standing to sue on their First Amendment claims. The remaining arguments proffered by Defendants are denied without prejudice, pending Plaintiffs' request for an extension of time to consult with all Plaintiffs on whether an Amended Complaint should be filed.

Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss based on lack of standing on Plaintiffs' First Amendment claims **(Docket No. 7, filed October 3, 2003)** is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Extension of Time to File an Amended Complaint or Status Report **(Docket No. 35, filed September 27, 2006)** is GRANTED. Plaintiffs must file either an Amended Complaint or a Status Report within thirty (30) days from the date of this Order. Defendants may thereafter renew their Motion to Dismiss based on ripeness and mootness in addition to any arguments they wish to present to the Court.

                                                                 S/Denise Page Hood
                                                                 Denise Page Hood
                                                                 United States District Judge

Dated:  September 29, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 29, 2006, by electronic and/or ordinary mail.

                                                                  S/William F. Lewis
                                                                  Case Manager